UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN PERROTTA,                                          :
                    Plaintiff,                         :
                                   :

  v.                                                   :

                                   :      **OPINION AND ORDER**
THE CITY SCHOOL DISTRICT OF                            :
YONKERS, DR. EDWIN QUEZADA,                            :      16 CV 9101 (VB)
YONKERS BOARD OF EDUCATION,                            :
MOIRA GLEESON, THE DEPARTMENT OF                       :
HUMAN RESOURCES FOR YONKERS                            :
PUBLIC SCHOOLS, and CARLOS MORAN,                      :
                    Defendants.                        :
------------------------------------------------------------x

Briccetti, J.:

       Plaintiff John Perrotta brings this action under 42 U.S.C. § 1983, alleging defendants the

City School District of Yonkers, Dr. Edwin Quezada, the Yonkers Board of Education, Moira

Gleeson, the Department of Human Resources for Yonkers Public Schools, and Carlos Moran

retaliated against him in violation of his First and Fourteenth Amendment rights, and conspired

to do so.  Plaintiff also brings related state law claims.

       Now pending are (i) defendants' motion to dismiss the amended complaint pursuant to

Rule 12(b)(6) (Doc. #15), and (ii) plaintiff's cross-motion for leave to file a second amended

complaint pursuant to Rule 15(a)(2).  (Doc. #29).

       For the reasons set forth below, defendants' motion is GRANTED and plaintiff's cross-

motion is DENIED.

       The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**BACKGROUND**

I.    Factual Background

In deciding the pending motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint ("Am. Compl.") and draws all reasonable inferences in plaintiff's favor.

Plaintiff is a licensed security guard.  On September 11, 2015, he began working as a Public Safety Officer at Montessori School 27, a public school in Yonkers with students between the ages of 4 and 12 ("the school").

On November 3, 2015, plaintiff participated in "a professional training session about sex offenders."  (Am. Compl. ¶ 17).  During this training session plaintiff was instructed that in the event he "became aware of the presence of a registered sex offender on the school grounds," he was to "immediately report it to his supervisor or the school principal, [d]efendant Gleeson." (Id. at ¶ 18).  He was not instructed to proactively seek out information relating to sex offenders in the vicinity of the school.

On January 23, 2016, through an application ("app") on his smartphone, plaintiff learned that an individual he knew to be the son of an assistant teacher at the school, and who "was often present at the school," was a "registered sex offender."  (Am. Compl. ¶ 20).  Plaintiff believes— defendants disagree (see Defs.' Br. at 5)—that by law this individual was "not permitted to enter or come within 1,000 feet of the grounds of the School."  (Id. ¶ 22).

On January 26, 2016, plaintiff reported to Gleeson the information he had learned about the sex offender.

On March 4, 2016, plaintiff received by mail a "Notice of Termination of Probationary Position," signed by defendant Moran, the Commissioner of the Yonkers Department of Human Resources.  (Am. Compl. ¶ 26).

On March 7, 2016, plaintiff and his union representative met with Gleeson to discuss the reasons for plaintiff's termination. Gleeson allegedly told plaintiff he was being terminated for reporting the presence of the sex offender, and that "she had acted on direct orders of Defendant Quezada," the Superintendent of Yonkers Public Schools. (Am. Compl. ¶ 27).

On March 9, 2016, plaintiff was called to a meeting with Moran. At this meeting, plaintiff was allegedly told it had been Gleeson's decision to terminate plaintiff. Also at this meeting, plaintiff requested that he be permitted to voluntarily resign rather than be terminated. Moran denied that request without explanation.

## DISCUSSION

I.    Defendants' Motion to Dismiss

A.    Rule 12(b)(6) Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a

3

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

      B.     First Amendment Claim

Defendants argue plaintiff has failed to state a claim for retaliatory termination in violation of his First Amendment[1] rights because he was not speaking as a private citizen when he reported the presence of a sex offender on school property.

The Court agrees.

"To establish a First Amendment retaliation claim, a plaintiff must show: (1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection between the speech and the adverse employment action." Singh v. City of New York, 524 F.3d 361, 372 (2d Cir. 2008) (citing Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2006)).

However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). To determine whether a public employee's speech is protected, the Court must determine "(1) whether the subject of the employee's speech was a matter of public concern and

---

[1]    This cause of action in plaintiff's amended complaint is labeled "[r]etaliatory termination in violation of Plaintiff's rights under the First and Fourteenth Amendments." (Am. Compl. at 7) (emphasis added). However, plaintiff does not articulate what his claim based on the Fourteenth Amendment is, and the phrase "due process" does not appear anywhere in the amended complaint. The Court thus understands the reference to the Fourteenth Amendment to be an extension of plaintiff's First Amendment claim, because he sues a city school district. See Cantwell v. Connecticut, 310 U.S. 296, 303 (1940). In any event, to prevail on a procedural due process claim under the Fourteenth Amendment, plaintiff must show he possessed a protected liberty or property interest and was deprived of that interest without due process. McMenemy v. City of Rochester, 241 F.3d 279, 285–86 (2d Cir. 2001). Here, plaintiff does not have a property right to his employment with the school because he was a probationary employee. Jannsen v. Condo, 101 F.3d 14, 16 (2d Cir. 1996).

(2) whether the employee spoke 'as a citizen' rather than solely as an employee." Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015) (quoting Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir. 2011). "If the answer to either question is no, that is the end of the matter." Id.

To determine whether a public employee speaks as a citizen, the Court must consider two things: (i) whether the speech "fall[s] outside of the employee's official responsibilities," and (ii) whether there is a "civilian analogue" to the method of speaking. Matthews v. City of New York, 779 F.3d at 173 (internal quotation omitted).

"The inquiry into whether a public employee spoke pursuant to his or her official duties is 'a practical one.'" Montero v. City of Yonkers, New York, 224 F. Supp. 3d 257, 265–66 (S.D.N.Y. 2016) (quoting Weintraub v. Bd. of Educ., 593 F.3d 196, 202 (2d Cir. 2010)). "In making this determination, courts in the Second Circuit 'focus[] on the subject, manner, and context of the speech to determine whether it relates to topics that are indispensable prerequisites to effective performance of the speaker's primary employment responsibility, and thus not entitled to First Amendment protection.'" Id. (quoting Dillon v. Suffolk Cty. Dep't of Health Servs., 917 F. Supp. 2d 196, 208–09 (E.D.N.Y. 2013)).

"Speech has a 'relevant civilian analogue' if it is made through 'channels available to citizens generally.'" Matthews v. City of New York, 779 F.3d at 175 (quoting Jackler v. Byrne, 658 F.3d at 238). "[A] form or channel of discourse available to non-employee citizens," includes things like "a letter to the editor or a complaint to an elected representative or inspector general." Weintraub v. Bd. of Educ., 593 F.3d 196, 204 (2d Cir. 2010).

Here, the question is not whether plaintiff's speech addressed a matter of public concern—undeniably it did. Instead, the question is whether plaintiff was speaking as a citizen rather than as an employee when he told Gleeson about the presence of a sex offender on school

property.  The Court concludes plaintiff has not plausibly alleged he was speaking as a citizen in this context.

First, plaintiff specifically alleges in the amended complaint that he attended a "professional training session about sex offenders," and that "[d]uring the training session [p]laintiff was instructed that in case he became aware of the presence of a registered sex offender on the school grounds . . . to immediately report it to his supervisor or to the principal." (Am. Compl. ¶¶ 17-18).[2]  In addition, plaintiff's job description states public safety officers are responsible for "maintain[ing] a safe environment for all personnel, visitors and occupants of the assigned buildings and spaces," and "restrict[ing] access to public buildings and spaces to those authorized." (Perez-Faringer Dec'l Ex. E).[3]  The job description also states that "[i]ncidents are reported to immediate supervisor," and that safety officers do "related work as required." (Id.). While "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes," Garcetti v. Ceballos, 547 U.S. at 424–25, here plaintiff's formal job description is instructive because it is consistent with his allegation that part of his duties was to report the presence of sex offenders to his supervisors.

---

[2]    In addition, in his opposition to defendants' motion to dismiss, plaintiff again states he "was specifically instructed that no sex offenders, regardless of their level of classification in the state sex offender register or otherwise, are allowed to enter the school." (Opp'n at 4) (emphasis in original).

[3]    "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).  Here, plaintiff incorporated by reference his job description when he alleged "[i]t was not part of his professional duties" to obtain or convey to defendants information about sex offenders on school grounds.  (Am. Compl. ¶ 23).

Plaintiff's allegations that (i) he installed an app that identifies sex offenders by location "upon his own initiative as a private citizen," (ii) "[i]t was not part of his professional duties to obtain this information or to convey it to Defendants," and (iii) defendants failed "to comply with . . . their statutory duties" to be informed of registered sex offenders near their schools, are conclusory and, more importantly, beside the point. (Am. Compl. ¶¶ 23, 25). First, "[a]n employee's characterization of her own speech is not dispositive." Ross v. Breslin, 693 F.3d 300, 307 (2d Cir. 2012). Moreover, plaintiff's First Amendment claim does not stem from collecting information from the app; it relates to reporting the sex offender's presence to the school principal. As defendants point out, "regardless of how plaintiff came into possession of information regarding an alleged sex offender on school grounds, he repeatedly acknowledges that he reported [the sex offender's presence] to his direct supervisor in accordance with his training and pursuant to his job duties." (Reply at 7). Likewise, his bald assertion that it was not his responsibility to "convey [this information] to Defendants," is belied by the other allegations of his complaint, his job description, and simple common sense.

Moreover, plaintiff has not alleged or argued there was a civilian analogue to his speech, and the Court finds that question is not dispositive here. First, much as in Weintraub, "[r]ather than voicing his grievance through channels available to citizens generally, [plaintiff] made an internal communication pursuant to an existing . . . policy established by his employer." Weintraub v. Bd. of Educ., 593 F.3d at 204. In addition, "[w]hile the Second Circuit has noted that there can be instances where employee speech delivered internally within the speaker's place of employment may still have a civilian analogue, such as where the recipients of that speech also 'regularly heard civilian complaints,'" Lefebvre v. Morgan, 2016 WL 1274584, at *11, n.4 (S.D.N.Y. Mar. 31, 2016) (quoting Matthews v. City of New York, 779 F.3d at 176), plaintiff has made no such allegations here. For example, plaintiff has not alleged that Gleeson

"regularly met with members of the community, or otherwise spoke with citizens about" sex

offender reporting. Id. (internal quotation omitted). Finally, even if it could be assumed that

Gleeson, as principal of the school, might on occasion speak with members of the public about

school security, and thus there was a civilian analogue to plaintiff's speech here, that would not

change the Court's analysis. As in Garcetti, "[t]he controlling factor in [plaintiff's] case is that

his expressions were made pursuant to his duties" as a public safety officer. Garcetti v. Ceballos,

547 U.S. at 421.

In sum, plaintiff has not plausibly alleged he spoke as a citizen when he reported the

presence of a sex offender on school grounds to Gleeson. It was part of his "daily professional

activities" as a public safety officer to report the presence of a sex offender. Garcetti v. Ceballos,

547 U.S. at 422. In other words, he was "perform[ing] work he was paid to perform." Id.

Accordingly, plaintiff's First Amendment retaliation claim is dismissed.[4]

C.      Monell Claim

Plaintiff also brings a cause of action for "[r]etaliatory termination in violation of [his]

rights under 42 U.S.C. § 1983 and § 1981," by virtue of a "policy or custom under which

unlawful practices occurred, and allowed the continuance of such policy or custom." (Am.

Compl. at 9). The Court fairly construes this to be an inartfully pleaded Monell claim. See

Monell v. Department of Social Services, 436 U.S. 658 (1978).

---

[4]      As the Second Circuit and Supreme Court have noted, "public employees who suffer
retaliation for their official speech" and thus do not have a valid First Amendment claim "are not
without recourse, and should avail themselves of the 'powerful network of legislative
enactments—such as whistle-blower protection laws and labor codes—available to those who
seek to expose wrongdoing.'" Ruotolo v. City of New York, 514 F.3d 184, 189 (2d Cir. 2008)
(quoting Garcetti v. Ceballos, 547 U.S. at 425).

Defendants argue (i) Section 1981 relates only to race discrimination claims, which the facts do not support here, and (ii) plaintiff has not stated a claim under Monell.

The Court agrees.

First, to state a claim under Section 1981, a plaintiff must allege facts from which the Court can infer an intent to discriminate on the basis of race or alienage. See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam); accord Anderson v. Conboy, 156 F.3d 167, 180 (2d Cir. 1998). Here, there are no allegations regarding race. Accordingly plaintiff's Section 1981 claim is dismissed.

Next, under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. at 694. To state a Monell claim, a plaintiff need not allege the policy or custom itself is unconstitutional; rather, liability exists when a municipal policy is valid but the municipality's actual practice is not. Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125–26 (2d Cir. 2004) (practice of using excessive force can be basis for municipal liability even though city's policy on use of force is itself constitutional).

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), such claims nevertheless must meet the plausibility requirements of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 572 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009)." Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. September 13, 2013) (quoting Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993)). "In other words, boilerplate allegations will not suffice." Id. (internal quotation marks omitted). In sum, without more, "[t]he allegations [a defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient." Missel v.

Cty. of Monroe, 351 F. App'x 543, 545-46 (2d Cir. 2009) (summary order) (citing Dwares v. City of New York, 985 F.2d 94, 100-02 (2d Cir. 1993)).

Plaintiff's Monell claim here—to the extent it is asserted at all—is barely decipherable. Nevertheless, plaintiff alleges he was injured by being terminated. Thus, to state a Monell claim, plaintiff would have had to have alleged defendants had a policy or practice of terminating employees who report sex offenders on school property. Plaintiff's amended complaint includes no such allegation.

Accordingly, plaintiff's Monell claim is dismissed.

D.     Conspiracy Claim

Plaintiff also brings a cause of action for "[c]onspiracy under 42 U.S.C. [§] 1983, against Defendant Gleeson, Defendant Moran and Defendant Quezada." (Id. at 10).

Because the Court dismisses plaintiff's Section 1983 claims, his conspiracy claim also fails. See Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source. Therefore, although the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right.").

II.     State Law Claims

Plaintiff's amended complaint contains state law claims for retaliatory termination, aiding and abetting, libel per se, fraud on the court, and respondeat superior. (Am. Compl. at 10-13).

Because the Court is dismissing plaintiff's federal claims, there are no longer any claims remaining asserted by him over which the Court has original jurisdiction.

"A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009); 28 U.S.C. § 1367(c)(3).

The Court declines to exercise supplemental jurisdiction over the remaining state law claims here.

III.     Plaintiff's Motion for Leave to File an Amended Complaint

Plaintiff cross-moved for leave to file a second amended complaint ("SAC").

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." See also Foman v. Davis, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). A district court may deny leave for "good reason" such as futility, bad faith, undue delay, or undue prejudice to the opposing party, but "outright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200-01 (2d Cir. 2007). Amendment is futile when the proposed amended complaint could not withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6). See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001); see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)) (establishing plausibility framework for evaluating a motion to dismiss).

Here, plaintiff—who is represented by counsel—has already been given one opportunity to amend, and in fact did file an amended complaint, in response to defendants' initial motion to dismiss. (See Doc. #12). Moreover, plaintiff's proposed second amended complaint—submitted after defendants moved to dismiss the amended complaint—would not survive a renewed motion to dismiss. In particular, the proposed second amended complaint still contains allegations that

11

during the training session on November 3, 2015, plaintiff was "instructed . . . to immediately report to his supervisor or to the principal, Defendant Gleeson," if he "became aware of the presence of a sex offender on the school grounds." (Perez-Faringer Dec'l Ex. A (Proposed SAC) at ¶ 19). It also does not include any additional allegations suggesting plaintiff has a valid Monell claim. As a result, the Court concludes amendment would be futile as it would not cure the defects in the complaint that is subject to the instant motion.

Accordingly, plaintiff's cross-motion for leave to file a second amended complaint is denied.

## CONCLUSION

Defendants' motion to dismiss the amended complaint is GRANTED.

Plaintiff's cross-motion for leave to file a second amended complaint is DENIED.

The Clerk is instructed to terminate the motions (Docs. ##15, 29) and close this case.

Dated: September 21, 2017
      White Plains, NY              SO ORDERED:

                                  Vincent L. Briccetti
                                  United States District Judge